I guess I've been doing this for a long time for these people. Because the time is so limited, unless the court had any specific questions about the claim, the claim preclusion or issue preclusion, I was kind of wanted to focus on. Are the dates for the McCombs the same as the Bunyans? As far as when the assessments were? Yeah. And when the decisions were, everything's the same. Is that right? Yes. Okay. Now, why is it that we don't have the record for the McCombs? The – there were two bankruptcies, and when Judge Munn realized that there were possibility of others, she decided that she would just take the case, and then she decides to deal with the Bunyans. And if I had no objection, it was so identical that the result would be the same. All right. I'd kind of like to focus on the Norvig ruling and how it's wholly in the abstinent express rule, but the contrary, a motion for reconsideration terminates the writing of the 90 limitations period. The interesting aspect of Norvig was when I tried to find out how they came up with that ruling, I had found cases that stood for the proposition that multiple motions in a trial court would toll finality of the case, and they all seemed to end in the early 40s. There was Bowman, Leishman, Seminole Nation, which I believe was in the 37. They all tended to end there. And apparently in the 40s, they changed the rules of civil procedure, and they expressly limited the time period in which a time-tolling motion could be filed. They expressly limited it. And they did not do so with the criminal cases. So prosecutors had an option to file motions for reconsideration outside the strict civil procedure statutes. And when I tracked Ibarra back, I tracked Ibarra back to Norvig — I mean, back to Deter and then back to Healy, and they talked about the unquestioned practice of Pop Bowman, saying that a court hears a motion, and I cited the pink rule, a determination whether or not the judgment should be modified, that would stay finality. And they've used that as the grounds. And that's expressly what the Norvig court came to that ruling, unless there was an express rule to the contrary. And the tax court has never changed its rules to require the filing within a certain period of time. They have rather liberal motions for reconsideration and to vacate it. They said it shall be filed within 30 days or whenever the court lets you do it. It's just wide open, unlike the Federal rule of civil procedure that says it shall be filed within 10 days of the judgment. And you cannot toll beyond that. I believe that there was one Ninth Circuit case that somebody actually was able to get in two motions for reconsideration within 10 days. And they tried to say that you couldn't do that because the first — you only had one motion for reconsideration. And they said, no, if you can get them both in in time, the second one tolled. And I think essentially, in this case, we believe that the motion for reconsideration, the trial judge recognized that what was going on in the Lombardo case was going to impact the judgment. And he waited and he waited and he waited until Lombardo came down, and then he said, after due consideration and because of Lombardo, he denied the motion. We believe that that told the finale. Counsel, what effect does this Ninth — the appeal to the Ninth Circuit and then the dismissal for non-contest, what's that got to do with this case? Well, since I was the counsel in that, we had filed — I had filed the notices of appeal, and the government had filed a motion to dismiss. And at that moment, then came the Jensen case, which was one of the same group of 100, all decided by the same trial judge, the same facts. It came down adverse to my client's interest and me, and the government filed a motion to bind everyone to the result. And the result at that point in time was, if I won on the jurisdiction issue, I would have lost on the merits. It was clear. That's why we filed the motion. So rather than — it was not the most artful language I used, but I simply said, there's no reason to pursue these cases anymore because I'm going to lose on the merits. And that's where I cited the non-defense. It didn't make sense to fight this war when you're going to lose on the merits. Now, the merits of Jensen were exactly what? That there was a dismissal for failure to properly prosecute. There were — I tried to convince the trial judge that there were missing records. The government is unwilling to recognize that. And the court took the position that I failed to properly prosecute the case. There was no cases. I didn't do — I didn't properly prosecute it, and that was the decision of the panel decision. And it was a without oral argument decision. And as soon as that came down, the government filed a motion to be able to publish it and or to cite it because they knew that that would govern all the rest of the cases. And then the one in a million shot popped up, and suddenly it found out that government hadn't or the trial counsel hadn't been the most honest about missing records. And a significant bunch of them appeared, including the client file in Jensen, and it got overturned. Fortunately, I'd already allowed the dismissal of the other cases. Jensen, I believe, was in Hellas Cobra about four months later. It was reversed by then. These cases had all been dismissed. I was unaware. I think the rule is that a dismissal for lack of jurisdiction is without prejudice, unless you can find some new way to solve the jurisdictional issue. In Semtec, it was a really interesting case. The parties litigated in California in diversity, and the defendant interposed a statute of limitations claim saying that it was a two-year statute and that they violated it, they don't have to litigate here. And in a contested proceeding, the court agreed with them, and went up on appeal, dismissal with prejudice, or dismissal on the merits. And the plaintiff decided, well, where is another place I can fight? Went to East Coast, found a four-year statute, started over again. And they raised raised judicata, and they almost got away with it until the Supreme Court interceded and said not all dismissals for lack of procedural dismissals are the same. They have to be litigated or they are issue precluded. Issue preclusion, I believe, applies here because it was not actually litigated. How do you contest the validity of an assessment that's not related to the dollar amount? How could you do it? Uh-huh. You could pay it and ask for it back. And then sue in district court. For it back, yes. That's, or you could, apparently, in the Haley case that was discussed, they filed an independent action to try to stop the assessment. And the Haley court, the district court, and then it was affirmed, said they ruled on the merits as to when the tax court case was final. And they ruled that the tax court case was not final at that point in time and the assessment was valid. Normally there's a requirement you have to pay it. Suppose you timely appeal the motion to vacate. Would the tax court have had jurisdiction to decide the reconsideration? There are cases that suggest that they do, but not on the Supreme Court rationale. The case is either open or it's closed. And if you have a motion for reconsideration, it in and of itself renders the judgment not final. There are some cases that I have seen where they have suggested that you could appeal the motion for reconsideration separately from the motion to vacate, but they certainly do not, in my mind, follow the line of Supreme Court cases of common law. So if that were appealed and there were no jurisdiction in the tax court to decide that, that would be the end of the case, wouldn't it? Well, now I'm confused. The motion to vacate, when it was finally denied, an appeal could have been taken at that moment. Yeah. If it were taken, would there have been any jurisdiction for the tax court to have decided the motion for reconsideration? Correct. Would there? No, there would not have been. No. There would not have been. So that was the end of the case, if it had been appealed. So is it any different, the fact that that was not appealed, that that was the final judgment, why shouldn't the same thing apply, that there is no jurisdiction to the continuing jurisdiction to decide the motion for reconsideration? If I understand the question correctly, as soon as the motion to vacate was denied, the taxpayer is given the opportunity to what he wants to do next. He can file a notice of appeal within 90 days, and at that point, nothing can happen, further can happen, the tax court, everything, the power goes to the court of appeals. Or he could file a motion for reconsideration. But that doesn't toll it, right? No, I believe it does toll it, because it seeks a reexamination of the judgment. But under our Nordvig case, it doesn't, does it? It does. Why? Because it's a motion for reconsideration, absent a express rule of the contrary tolls finality. And you can do that anytime? The court doesn't send it back to you and say, I won't file this? Under the rules that have been developed, if you get the court to listen to you 89 days later, it tolls finality. The court has apparently no obligation to listen to you after 30 days, because at that point, a motion for reconsideration is untimely. Well, didn't Nordvig preserve the alternate basis for the Treminovich decision that, if it's successive, it doesn't apply? Asserting. And it said, successful filing and it was really specific, asserting the same grounds, and frankly, based upon the Supreme Court precedent, that's not true. If you can convince a judge while he still has power to reexamine something, it renders the judgment not final. But aren't we bound to follow Nordvig? How we presented this case, we presented this case and said, when they assert the same grounds, we do not believe we were asserting the same grounds. We were asserting different grounds. What was the different ground? As of September of 1991, they were reopening the grand jury issue and there was now evidence that the files were missing. The judge before didn't care. He didn't allow it to go into that issue and he wasn't concerned at all about the grand jury issue because he had been relying on somebody else. Then another judge decided he would reexamine the entire grand jury issue. Yeah. Another judge other than the one that is involved here with Pineda. But under the way of the tax court, my clients were before multiple judges, not one judge handled the case from beginning to end. The cases got shifted around to handle group issues. The grand jury issue, the first grand jury issue, was actually handled by a special trial judge, Panucos, and that was started out as part of the Abeson case. And all the clients were bound by the Abeson case. We tried to convince our judge to say that there was a difference in that we filed motions to shift the burden and he would stamp them denied. And then he told us at the hearing that the reason he did that was because it had been resolved by Abeson. And he didn't make any independent findings. He said that he was relying on Abeson. And then another judge, Judge Gerber, came in and he was willing to open up the grand jury issue again and set aside the grand jury rulings. And the Judge Shields thought it was significant enough that he wanted to wait to see what Judge Gerber ruled. And he cited it because we lost him before Judge Gerber, he denied the motion. He knew that there was going to be an impact. And in the Lombardo cases, there was a – the issue was whether or not the misuse of grand jury required a shifting of burdens if it tainted the grand – tainted the statutory notice and the like. And those issues were available. They were common issues. Everybody involved in Bergen-Allen had the same common issues. There's no other comment. I'm going to reserve the remainder. May it please the Court, I'm Francesca Ugolini, counsel for the United States. The Bankruptcy Court correctly ruled that it should not reach the ultimate issue in this case because the ultimate issue, the question of the finality of the tax court decisions, which affects whether the IRS's assessments were premature, was decided by this Court when it granted the government's motion to dismiss the tax court appeals for lack of jurisdiction. I just want to clarify something that the debtors had raised in their reply brief. They had asserted that the government is sort of arguing that the Bankruptcy Court did not have jurisdiction based on some kind of combination of Section 505, A2A, and Res Judicata. It's the government's position that Section 505, A2A, and Res Judicata are separate and independent grounds, both of which apply in this case and both of which prevent the debtors from being able to challenge the finality of the tax court cases in the present litigation. Section 505, A2A of the Bankruptcy Code provides that the Bankruptcy Court does not have jurisdiction to redetermine the amount or legality of a tax if the amount or legality of a tax has been contested before and adjudicated by a court of competent jurisdiction prior to the Bankruptcy Court proceedings. In this case, the question of the legality of the tax court assessments, the IRS's assessments, was contested before this Court and adjudicated by this Court when it granted the government's motion to dismiss the tax court appeals. The debtors filed a notice of appeal with this Court putting the question of the finality of the tax court's decision in issue. The government filed a motion to dismiss the tax court appeals in which we addressed all of the issues that are raised by the debtors in the present litigation. In the government's motion to dismiss, we addressed motions to enjoin collection that the debtors had filed in their tax court cases. In those motions to enjoin collection, the debtors had raised all of the arguments they now raise. They alleged that the IRS's assessments were premature, that the motions for reconsideration told the finality of the tax court decisions. All of these issues were addressed by the government in its motion to dismiss. We also addressed the Trujillo case and argued that successive post-judgment motions do not told the finality of a tax court case. The debtors filed their notice of nondefense to our motion to dismiss. This Court, in an opinion that was conceitedly not very lengthy, expressly granted our motion to dismiss. Therefore, the question was contested before this Court. The question was also adjudicated by this Court. The legislative history of Section 505A2A and the case law under that section establishes that you don't need an actual adjudication on the literal merits of the case for the question to have been adjudicated by a court. All you need is that a judgment of a court of competent jurisdiction to have been decreed. When this Court granted the government's motion to dismiss for lack of jurisdiction, it issued a judgment. The case law also establishes that a dismissal for, because of a default or a dismissal for failure to prosecute is an adjudication on the merits. So in this case, the elements of Section 505A2A of the Bankruptcy Code are satisfied, and the Bankruptcy Court did not have jurisdiction to reconsider the question of the finality of the tax court's decision. Therefore, this whole issue of whether the IRS's assessments were valid is not a question that the Bankruptcy Court could even consider. Similarly, the debtors were barred by the doctrine of res judicata from re-raising the question of the finality of the tax court's decisions. I don't want to run through all of the elements of res judicata because they're very similar to Section 505A2A. Let's go back to exactly what the district, what our court did when it dismissed for lack of jurisdiction. I, what did it say? What did this Court say when it dismissed for lack of jurisdiction? I believe I can pull out exactly what the Court's order was. I believe it said the government has filed a motion to dismiss for lack of jurisdiction, and then it cited the Trahimovich case. And then it said appellants have filed a notice of nondismiss, a notice of nondefense. We hereby grant the government's unopposed motion to dismiss. So the Court did not simply dismiss the case. It expressly granted the government's motion to dismiss. That suggests that the Court had considered the merits of the government's motion and that it was granting the motion based on the substance of the motion. The only grounds for the motion to dismiss were the untimeliness of the notices of appeal based on the successive post-judgment motions. So it had to be for lack of jurisdiction, wasn't it? Correct. So they, our court didn't have, if it didn't have jurisdiction, it couldn't have considered the other issues that you raised. It could not have considered the validity of the assessment. Well, if this Court, the final, the assessments under the, under the Internal Revenue Code, the IRS can only assess if the tax court decision is final. The tax court decision is final if the time for filing a notice of appeal is expired if no such notice is filed. If, when this Court determined that it lacked jurisdiction, it necessarily determined that the time for filing a notice of appeal had expired. So even though the claim was not exactly the same, the question was sort of necessarily decided. In fact, this sort of turns to the issue of res judicata. This Court has determined, I think it was the Owens case, Owens v. Kaiser Foundation, that in determining whether a claim is the same for purposes of res judicata, you don't necessarily look at whether it's the same cause of action, but you look at whether the claim involves the same transactional nucleus of facts. In this case, given that the question of whether the validity of the IRS assessments necessarily turns on whether the tax court decision was final, which then necessarily turns on the question of whether the notices of appeal were timely, I think this case involves the same transactional nucleus of facts that was at issue in the government's motion to dismiss. So when the tax court rendered its decision on the motion to reconsider, it was improper? I think at that point, the tax court's decision had already become final. Yes. So it shouldn't have decided at this point? At that point, correct. The tax court's decision had become final at that point. And this is something ---- Let me get some dates from you. The notice of appeal to our court was what date? That was filed. They had filed that. Let me just think because I don't actually have the exact dates before me. The tax court had denied their motion for reconsideration. I believe that was in November of ---- Well, we've got it dismissed for lack of timeliness on the appeal. So I want to know the date when it was appealed and then what date we would go back to as having been the trigger to make this untimely. Okay. Can I just grab my brief? Sure. Okay. Because that seems to me it's kind of critical. Let's see. The debtors in this case had filed their notice of appeal with this Court on January 7, 1993. The Commissioner filed his motion to dismiss on May 19, 1993. Yeah, but I want you to go backwards and tell me ---- And say when the notice of appeal would have been timely? Yeah. Okay. Or the date upon which the tax court opinion was final from which you then count. Okay. The tax court's decision became final on December 26, 1991. That was 90 days after the tax court's denial of the first motion, the motion to vacate. And the IRS assessed the taxes in February of 1992. So that was clearly after the tax court's decision had become final. I've got a ---- On page 9 of your brief, you say the IRS assessed the taxes because it viewed the tax court cases as having become final on December 26, 1991. Now, what's that date? That's 90 days after the tax court denied the first post-judgment motion, the first motion that told the appeal period. So that's really when you're counting the notice of appeal from? Right. Had a notice of appeal been filed on or before December 26, 1991, then the IRS's assessments would have been premature because the filing of the notice of appeal would have further told the time ---- would have further suspended the statute of limitations on making assessments or, well, it would have told the finality of the tax court decision, which would have then pushed the IRS back from making the assessments of the taxes. The debtors did not file a notice of appeal within that period. They waited until the tax court ruled on their motion for reconsideration. They actually filed a third post-judgment motion, a motion for special leave to file another motion to vacate. That was denied. And in that time, they filed their notice of appeal. I'd just also like to clarify a point regarding the Jensen case, because debtors ---- the debtors have correctly pointed out that the ---- that they filed their notice of non-defense based on this Court's having published the Jensen opinion, which ultimately that opinion was vacated. There's no evidence in the record that the IRS trial counsel was not honest about the whereabouts of the IRS records. It is true that it did turn out that there were records that had been seized from the law offices of Berg and Allen, that it turned out, despite the Department of Justice's efforts to know exactly where the records were located, they did not, in the end, know exactly where the records were located. But there's no evidence that the trial counsel had been lying about the whereabouts of the records. In fact, the record also contains evidence that debtors' counsel was continuously given access to the records and that he did not use those opportunities to view the records. Jensen ---- the ultimate outcome of the Jensen case was also based on one of the parties in the Jensen couple. One was deceased, and he was dismissed from the case for, I believe, lack of jurisdiction, because there was no representative that was sort of admitted in his place. And the other, his spouse, was ultimately settled with the IRS based on an innocent spouse defense. There was sort of nothing that came of the boxes of Jensen documents that were found that ---- and this is all in the record ---- that sort of led to the IRS conceding on the substantive tax issues. And, in fact, if you look at the Abbeson case, which was the first test case that was tried in this whole Berg and Allen litigation, from the very outset of these cases, the taxpayers conceded all of the substantive tax issues that were the subject of the notices of deficiencies. From the outset, they conceded their participation in these tax shelter investments and conceded that they were not entitled to the deductions and other tax benefits of these investments. What about opposing counsel's argument that if the motion for reconsideration is filed within that 90-day period and is on a different issue than the motion to vacate, that then that should toll it? Well, first of all, I'd like to just point out that the debtor's basis for that rule is the Trojimovic case. And I don't really read the Trojimovic case as necessarily creating an exception. I think this Court's language in the Trojimovic case is that we doubt that successive post-judgment motions asserting the same grounds can be tacked together to toll the time for filing a notice of appeal. I don't think that really creates an exception for successive post-judgment motions that assert new grounds. The facts before this case in the Trojimovic case, before this Court in the Trojimovic case, were successive motions that actually asserted the same grounds. So this Court didn't have an opportunity to consider motions asserting new grounds. But even if there is, even if there were motions asserting new, even if there was an exception for motions asserting new information, in this case, I don't think the motion for reconsideration did not assert new information. The motion for reconsideration asserted two things. One, that the government had misplaced documents that had been seized from the Bergen-Allen Law Offices. And number two, it informed the Court that the judge in a related case, the Lombardo case, was going to try the issue of misuse of grand jury information. And here, just as an aside, I'd like to clarify a point. I think the debtors asserted that, suggested that the Lombardo case somehow bound or was going to affect the appellants in this case, the Bunions. While the Abdesen case did bind them, the Lombardo case was just a related case that was going to bind them in absolutely no way. That was just a sort of parallel case. So on the first issue, the misplacement of documents, this issue had been raised by the debtors throughout the litigation, in their pretrial memo, in their motion to vacate, and the Court had already refused to pursue the issue. Debtors' counsel had had access to the IRS seized documents throughout the litigation. In the Lombardo case, when the Court ordered the IRS to produce those documents, debtors' counsel presumably had an opportunity to peruse the documents to determine which boxes were missing. And in the motion for reconsideration, there was absolutely no allegation that the Bunions' or McCollum's documents were missing. There was no allegation that their files were missing. There was no allegation that there was some new evidence that had been produced that materially affected their case in any way. And as I've mentioned, in the Abdesen case, the taxpayers had already conceded the substantive tax issues that were the subject of the litigation to begin with. On the issue of the misuse of grand jury information, the debtors had also already raised this issue throughout their tax case. And then later, at a tax court hearing, debtors' counsel had said that they were going to make a motion to vacate. Yes. I was actually just going to turn to that point. At a tax court hearing ---- Well, and maybe before you do, I disagree with your reading of Kraminovich. It says, ''Alternately, we conclude that even if the motion were a motion to vacate or revise, it did not extend the filing deadline because successive motions asserting the same grounds cannot be taxed.'' So it wasn't just you can't tax them. It says you have to assert the same grounds. Okay. Yeah. All right. Then when the Court was considering the motion to vacate in this case, the government in its opposition to the motion to vacate had pointed out that the debtors' counsel at a previous tax court hearing had said, well, although the debtors have sort of had ---- well, the government argued had sort of wasted a lot of the tax court's time raising this issue of misuse of grand jury information, their counsel had conceded at a tax court hearing that it had become a nonissue. Then in the debtors' response to the government's opposition to the motion to vacate, the debtors said, well, no, we ---- our counsel had just sort of said that at this hearing, but we still think it's an issue. And then in ---- so this is ---- then they raised it again in their motion for reconsideration. And in their motion for reconsideration, they weren't ---- all they were telling the Court was, wait, even though you haven't pursued the issue, Judge Lombardo in ---- Judge Gerber in Lombardo, a case that will not bind us in any way, is willing to try the issue. Please stop and wait to see what he does. So it's not really new information, and it wasn't a case that was going to bind the debtors' case in any way. On that basis, given that they had been alleging misuse of grand jury information throughout their case, that it had come up again at the motion to vacate, this ---- and that the Court was refusing to consider it, it wasn't the sort of new information that would ---- that would toll the time for filing a notice of ---- that would toll the finality of the tax court case. The other thing that I'd like to mention ---- I'm not sure I understand. I think the key is whether the same ground has been raised in the motion to vacate that is now raised in the motion to reconsider. And you're saying that it's not ---- it is the same, same ground, and that is because of what? Because both the motion to vacate and the motion to reconsider were re-arguing that the government had misplaced documents and misused grand jury information. And the motion to reconsider was basically sort of a status update of a parallel case, but was not actually alleging any new evidence regarding the Bunyan's or McCollum's specific case. I just want to make one final point. In the tax court context, there's a congressional intent that the Supreme Court has the date on which a tax court case becomes final be specified as accurately as possible. This is because the statute of limitations on assessment and collections is suspended during tax court proceedings and begins to run once the tax court decision becomes final. The IRS then has a statutory window within which it can assess the tax, and if it doesn't assess the tax, it loses all of its rights to collect the tax. The IRS can't be forced to scrutinize every post-judgment motion and determine, does this have enough new information so that we shouldn't assess? Because what if a court later disagrees? What if the taxpayer challenges their determination? There's never going to be any certainty. It also gives the taxpayers the sort of authority to avoid collection by dragging out the finality of every tax court decision by filing one post-judgment motion after another as long as they can come up with new information to put in their motion. Federal Rule of Appellate Procedure 13 already contains a workable and fair rule. There's one timely filed post-judgment motion tolls the appeal period, and that's it. Unless the Court has any further questions, I'm done with my argument. I just have one question. The district court on appeal from the bankruptcy court had one reason for granting your position. Do we pay any attention to that, or do we go back to the bankruptcy court's decision? I think the district court, we feel, came with the right result. It affirmed the bankruptcy court's decision. What's the wrong reason, don't you think? I think that they sort of missed the point because what we're ultimately getting at here is something that happened after the bankruptcy court. So I'm just asking, do we go back to the bankruptcy? I think that this Court, the cases decided by this Court say that when this Court reviews a decision of the bankruptcy court, it independently reviews the bankruptcy court's decision. I think so. Yes, that's correct. Okay. Thank you. Thank you. Counsel, did you have a couple of statements? Which ones? As to the issue of the availability of the files, at the time that Judge Gerber ordered the government to produce the files for my inspection, that was in February of 2002, three months after the motion for reconsideration was filed. The motion for reconsideration was filed based upon the preliminary information provided by IRS counsel that they couldn't locate some of the files. They knew some were missing. By February, it was obvious that a lot of them were missing. Approximately 25 percent of the materials were missing. And they had, from what I understood, they had been missing since the Abeson case in the late, late eights. They were never available. They didn't know where they were. On the issue of the finality and the ability of a taxpayer to drag out, essentially that's why you have to have new grounds. I guess if you could keep parceling out new grounds, you might try to do it. But the code says, I think it's $25,000 delay of proceedings. I think a trial judge would have plenty of power to be able to stop that. It's very easy to issue an order if he thinks you're stalling. This judge, who was quite adept at returning unfiled documents that we had submitted, he wanted to see the end of this. And Abeson, an order was issued binding all the Bergen Allen clients to Abeson. We had no choice. The facts were the same. Had we won Lombardo, government would have had absolutely no reason to have not been bound by Lombardo. The facts were the same. That's why Judge Shields wanted to see what the result was. He did not handle the grand jury issue at all. He relied on Abeson, and he was willing to rely on what Judge Gerber did. Could you explain that what the issue that you raised in the motion to reconsider, what difference would it have made to the tax court case? Why was it important? It was important because, one, it showed that there was now evidence that the files were missing. Government refused to admit that there was anything that was missing. And they argued in Jensen, it is our position, that none of the files are missing. That was their line. Well, suppose the files are missing. So what? What does that have to do with it? We had the belief that they were keeping them from us because there was evidence in there. Of what? Evidence that would be useful to our case, showing primarily the grand jury violations. So if you have a grand jury violation, how does that pertain to the assessment? The issue was whether or not the government – in Abeson we tried to show and in Lombardo we tried to show that the civil investigation was the product of a grand jury investigation and that that would somehow taint all of the evidence. And Judge Gerber agreed to consider that issue. He wanted to first find out if there was a grand jury violation. Why would that taint it? Because it was disclosed in violation of the secrecy rules at 6E. And there was, in fact, a case in the tax court that said that you would suppress all that evidence. As it turned out, this Court, about the same time as the Lombardo case went up on appeal, issued another opinion out here that essentially foreclosed any taxpayers from arguing violations of grand jury. And it cut the issue altogether. But it was enough of an issue that Judge Shields was willing to wait to see what was going to happen. And the goal in Lombardo was to shift the burden back to the government and deprive them from the use of all the evidence that they had obtained. Thank you. Thank you, counsel. We will submit Bunyan v. IRS. And this session of the Court is adjourned. All rise. The Court is adjourned. Thank you. The Court is adjourned. You have a good trip. Thank you.
judges: B. Fletcher, Hug, Wardlaw